# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE *ex rel.* John P. Neal

*v.*

JOHN A. ROCHE *et al.*

*Filed at Ottawa January 19, 1888.*

1. SCHOOLS—*title to school property and custody of school funds, in cities of over one hundred thousand—in whom vested.* Under existing legislation, cities having a population of over one hundred thousand are invested with the title to all real estate held for school purposes, and the city treasurer is given the custody of all school funds, no matter from what source derived.

2. SAME—*board of education in cities of over one hundred thousand—of its powers and duties—especially as to school lands.* The board of education in such cities is given no independent powers as to real estate held or to be purchased for school purposes. Whatever the board can do in reference to buying or leasing sites for school houses, or issuing bonds for the erection of buildings thereon, can only be done "with the concurrence of the city council." The powers and duties the board may exercise, independently of the city council, relate mostly to furnishing school houses, the employing of teachers, and the management of schools generally.

3. SAME—*board of education—at what time its powers to be exercised.* The powers conferred upon boards of education in cities having over one hundred thousand inhabitants, can be exercised only at a regular meeting of the board.

4. SAME—*sale of school lands—conditions to the exercise of the power.* Real estate held for school purposes in cities having over one hundred thousand

inhabitants, can be sold only on two express conditions: First, the sale must be made by the city council; and second, it must be made by the city council upon the written request of the board of education; and the city council have no right to make such conveyance except upon the terms specified in such written request.

5. SAME—*mortgage for purchase money, on sale of school lands—to whom to be given.* On the sale of school lands by the city council, in a city having more than one hundred thousand inhabitants, on the written request of the board of education, a mortgage given to secure the payment of the purchase money, with interest, should be given to the city council, and not to the board of education, under the present legislation.

This is an original proceeding instituted in this court. The facts of the case appear in the opinion of the court.

Mr. J. L. HIGH, and Mr. JESSE B. BARTON, for the relator.

Mr. JOHN W. GREEN, for the respondents John A. Roche, mayor, and A. H. Burley, comptroller.

Mr. CHARLES S. MORSE, for the respondent the board of education.

Mr. WILLIAM H. KING, also for the board of education.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is an original proceeding in this court, and is a petition for a *mandamus*, brought in the name of the People, on the relation of John P. Neal, against John A. Roche, mayor, and Augustus H. Burley, comptroller of the city of Chicago, to compel respondents to execute and deliver to the relator a deed for the premises described, in conformity with the request of the board of education of the city of Chicago, and with the resolutions of instructions by the city council of Chicago to respondents. All the facts necessary to be stated appear by the stipulations of the parties, so that only questions of law remain to be considered.

On the 23d day of February, 1887, the board of education requested the mayor and city council of Chicago to consent

to the sale, and to execute a conveyance, of block 88, and the north half of block 87, of school section addition to Chicago, to John P. Neal, upon the terms and conditions set forth in six distinct propositions. Nothing contained in the first, second and third paragraphs is important to the present discussion, and their contents need not be stated. The fourth and fifth clauses are as follows:

"*Fourth*—That the said John P. Neal and said Chicago and Great Western Railroad Company execute and deliver a mortgage to the board of education, secured upon the property conveyed, for the sum of $650,000, payable in fifty years after the 1st day of May, A. D. 1888, with interest from said date, at the rate of five per centum per annum, payable on the 1st day of November and May in each and every year during said period of fifty years, which mortgage shall contain covenants and conditions satisfactory to the board of education.

"*Fifth*—The said mortgage shall contain a provision that in case of default in the payment of said semi-annual interest, or in the payment of any taxes or special assessments lawfully assessed upon said premises, or any part thereof, and such default, in either case, shall continue for the period of thirty days after written notice to said company, the rate of interest upon the principal of said mortgage shall, for the remainder of said period of fifty years, be eight per centum per annum, instead of five per centum per annum."

By the sixth article the railroad company is obligated, within a period stated, to erect a depot on the land to be conveyed, for railroad purposes, at a cost of not less than $250,000, and to execute bond, with sufficient sureties, conditioned upon the performance of its obligations in that regard, to be approved by the board of education. It will be observed this article contains no provision that John P. Neal, to whom the property is proposed to be conveyed, shall do anything, and imposes no obligation upon him.

On the 21st day of March, 1887, the city council adopted or passed the following order:

"*Ordered,* that the mayor and city comptroller be and they are hereby authorized and directed to execute a conveyance of the north half of block 87 and block 88, school section addition to Chicago, to John P. Neal, upon the terms and conditions as set forth in the board of education communication, hereto annexed."

It is admitted the lots or blocks which this litigation concerns "are a part of the sixteenth section originally allotted by the act of Congress to the use of public schools, and that the General Assembly has, by one or more public acts, declared the title to said premises to be vested in the city of Chicago, for the use of public schools." The fourth article of the request submitted to the city council requires John P. Neal and the Chicago and Great Western Railroad Company to make a mortgage to the board of education, to secure $650,000, payable in fifty years, with interest at the rate of five per cent per annum, payable semi-annually. It is upon the compliance with this condition, and others of less importance, the city council authorized and directed respondents to make the deed. This they declined to do, and the principal question raised is, whether the mortgage to secure this large sum of money should be made to the board of education or to the city of Chicago.

The seventh division of section 80, of the act of 1872, "to establish and maintain a system of free schools," (Sess. Laws, 1871-72, p. 700,) which defines the duties of the board of education in cities having a "population exceeding one hundred thousand inhabitants," declared, "they shall have power to lease school property and to loan moneys belonging to the school fund, but all conveyances of real estate shall be made to the city in trust for the use of schools, and no sale of real

estate, or interest therein, whether used for school purposes or held in trust for schools, shall be made, except by the city council, upon the written request of the board of education." It is further provided in the same division of the same section, that "all moneys raised by taxation for school purposes, or received from the State common school fund, or from any other source, for school purposes, shall be held by the city treasurer as a special fund for school purposes, subject to the order of the board of education, upon warrants to be countersigned by the mayor and the city clerk."

It seems clear, from all the legislation on the subject, it was the intention of the legislature the city, in cities having over one hundred thousand inhabitants, should have the title to all real estate held for school purposes, and the city treasurer should have the custody of all school funds, no matter from what source derived. The board of education in such cities is given no independent powers as to the real estate held or to be purchased for school purposes. Whatever the board can do in reference to buying or leasing sites for school houses, or issuing bonds for the erection of buildings thereon, can only be done "with the concurrence of the city council." The powers and duties, the board may exercise, independently of the city council, relate mostly to furnishing school houses, the employing of teachers, and the management of schools generally. But all school property and funds are placed in and under the care of the city council or some city officer. There is no pretense there is any express provision of law that authorizes the board of education to take to itself the conveyance of any real estate, for the purpose of holding the title as an actual owner might do, nor is there any express statute giving the board authority to hold the title to real estate by way of a pledge or security for the payment of indebtedness, and if they have any such power, it must arise, by implication, from other powers expressly conferred.

As respects the sale of real estate held for school purposes, the statute is so plain it admits of no construction. It can only be sold on two express conditions,—first, the sale must be made by the city council; and second, it must be made by the council upon the written request of the board of education. But in case it is necessary to take a mortgage to secure any portion of the purchase money, the statute is silent as to what corporate body it shall be made. As has been seen, that is the question presented for decision. Ordinarily it is the vendor that takes the mortgage to himself, to secure the unpaid purchase money, and following the custom that prevails with private individuals in this respect, it would seem the corporate body authorized by law to convey school property should take to itself the mortgage to secure the balance of the purchase money, if any remain unpaid. It might be, it would be competent for the legislature to provide, by statute, on the sale of school lands by the city council the mortgage to secure the unpaid purchase money might be made to the board of education; but no provision has been made, by statute, for taking a mortgage in such cases to the board,—certainly the attention of this court has been called to no such provision in the elaborate argument of counsel. Outside of statutory provisions, considerations of convenience would seem to require the mortgage should be taken to the city. This mortgage is to run through a period of fifty years, during which time the interest is to be paid semi-annually. If paid, it would necessarily have to go to the city treasurer, under that provision of the statute which requires that funds received from any source for school purposes shall be held by the city treasurer. Again, if it should become necessary to foreclose the mortgage for any condition broken, it would seem the city would be the proper party to do it, for in the event the equity of redemption should be barred or cut off, the title would have to be vested in the city. The board has no authority, by statute or otherwise, to take the conveyance of real estate for school purposes,

nor, indeed, for any other purpose. But it is thought a fair and reasonable construction of the statute leads to the same conclusion. It is for the obvious reason, all conveyances of real estate purchased or otherwise obtained for school purposes must be made to the city, where such city contains over one hundred thousand inhabitants.

But the argument is, a mortgage of real estate is not a "conveyance." This may or may not be true, in a technical sense. Conveyances of real estate are most generally absolute or conditional. It will be difficult to find a definition of a mortgage upon real property that omits the idea of a *conveyance.* This court has said, in *Fitch* v. *Wetherbee,* 110 Ill. 475, "a mortgage is any conveyance of an estate to secure a debt or the performance of some act, such as the payment of money or the furnishing of indemnity, subject to be defeated by the performance of the act agreed to be done." The notion every one has of a mortgage is, that it is a conveyance of an estate or property to secure a debt or the performance of some particular act, subject to a defeasance, usually written in the body of the same instrument. Sometimes a mortgage deed is absolute in form, and the defeasance to which it is subject is written in a separate instrument; but it is none the less a mortgage for that reason. Would any one insist a mortgage deed, absolute on its face, was not a conveyance, in the most technical sense of that term? It certainly is. It would seem to follow, a mortgage upon school property, to secure the purchase money, should be made to the city, under that clause of the section of the statute being considered. It will bear no other reasonable construction, in the opinion of this court, consistently with the whole legislation on this subject.

It is not perceived the case of *Hartford Fire Ins. Co.* v. *Walsh,* 54 Ill. 164, contains anything in conflict with the views here expressed. That was an action on an insurance policy, which contained a clause, "if any change takes place in the legal title or possession of the property, whether by sale, * * *

voluntary conveyance, * * * without consent of" the insurer, the policy was to cease to be obligatory upon the company. It was held, the making of a mortgage by the assured after the policy was written, was not a sale, either in its ordinary or technical sense. It was said: "According to popular use, these terms, nor any of them, are understood to embrace a mortgage, and this being so, we would not enforce a forfeiture, if some one of them could be held technically to embrace such an instrument." The point decided in that case is, that the subsequent making of a mortgage on the premises insured is not a "sale or conveyance," in the sense those terms are used in the policy. That which would work a forfeiture must be an absolute sale or conveyance. A mortgage is a conveyance subject to a defeasance, and therefore did not come within the conditions of the policy. It would be contradictory to hold a mortgage was not a conveyance of the title to the property, and at the same time to hold, as the law is, a mortgagee, after condition broken, can maintain ejectment upon it as against the mortgagor. *Oldham* v. *Pfleger*, 84 Ill. 102.

The question discussed, whether the city or the board of education shall control the proceeds of the sale, in case it is perfected, is not involved in the present decision. It can not fairly arise until the mortgage indebtedness shall be paid, and that may be fifty years hence. Who shall have the control or custody of this mortgage when executed and recorded, is a matter of no consequence. It is only important it shall be safely kept.

It is stipulated by counsel representing the several parties, that in the event this court should hold, as it now does, the mortgage should be executed to the city of Chicago, a final order may be made directing the mayor and comptroller to execute and deliver the conveyance to the relator upon the execution and delivery of the mortgage and the bond to the city of Chicago, instead of the board of education. This can not be done, for the reason the board of education has never requested

the respondents to make the conveyance upon such terms, and it can not be known the board will ever request the conveyance to be made on such conditions. Respondents have no rightful authority to make any conveyance of the property, except upon the written request of the board of education. It is provided in this same division of section 80, "none of the powers herein conferred upon the board of education shall be exercised by them, except at a regular meeting of the board," and it is apprehended counsel can not agree, on behalf of the board, that the sale shall be made on any terms other than as expressed in the request submitted to the city council. That is a matter of discretion with the board of education it must exercise for itself. No one can do it in its stead.

This court is of opinion respondents properly refused to make any conveyance on the conditions contained in the request of the board as to the making of the mortgage, and the prayer for the peremptory writ of *mandamus* will be denied.

*Writ denied.*