THOMAS BRENAN et al.

_ v.

THE PEOPLE ex rel. Adolph Kraus et al.

*Opinion filed December 21, 1898.*

1. MUNICIPAL CORPORATIONS—*the Chicago board of education is a branch of the city government.* The incorporation of the city of Chicago under the general law did not abrogate the provisions of its former special charter, under which the Chicago board of education was a department of the city government, nor are such provisions, or the former general laws relating to the board of education, repealed by implication by the City and Village act and the general School law of 1872, or their subsequent amendments, so as to change the status of the board as a municipal agency.

2. CIVIL SERVICE—*act concerning, applies to employment under Chicago board of education.* Under section 8 of the Teachers' Pension Fund act of 1895 (Laws of 1895, p. 314,) the Chicago board of education has sole power to investigate and determine charges against teachers and school employees involving their removal, but the Civil Service act of 1895 applies, in all other respects, to offices and places of employment under such board.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

DANIEL J. MCMAHON, COLLINS & FLETCHER, SHOPE, MATHIS, BARRETT & ROGERS, (WILLIAM G. BEALE, S. P. SHOPE, and DONALD L. MORRILL, of counsel,) for appellants:

The board of education of the city of Chicago is a distinct *quasi* public corporation, and is an organization separate and distinct from the municipal corporation known as the city of Chicago. Therefore the employees of the board of education of the city of Chicago cannot be regarded as employees of the city of Chicago, within the spirit and meaning of the Civil Service law. The board of education of the city of Chicago is not a department of the city government. *School Trustees* v. *Douglas,* 17 Ill. 211; Laws of 1857, p. 259; School Law of 1872, sec. 10; *Glidden* v. *Hopkins,* 47 Ill. 528; *Speight* v. *People,* 87 id.

600; *People* v. *School Trustees,* 78 id. 140; *Fuller* v. *Heath,* 89 id. 312; *People* v. *Roche,* 124 id. 10; *McGurn* v. *Board of Education,* 133 id. 122; *Cravener* v. *Board of Education,* id. 145; *Plummer* v. *Yost,* 144 id. 74; *Smith* v. *People,* 154 id. 58; Rev. Stat. chap. 122, art. 6, secs. 17-28; Laws of 1879, p. 297.

All functions performed and all powers possessed by city officers, relating to school laws, are derived from the School law, and not from the city charter, thereby making such city officers, when performing such duties and exercising such powers, school officers and not city officers. *Fuller* v. *Heath,* 89 Ill. 312; *San Diego* v. *Dauer,* 32 Pac. Rep. 561; *Hill* v. *Boston,* 122 Mass. 380.

No part of the general School law of the State was repealed by the enactment of the Civil Service law. Repeals by implication are not favored, and will not be decreed unless it is clearly manifest that the legislature so intended. 23 Am. & Eng. Ency. of Law, 490; *Rich* v. *Chicago,* 152 Ill. 18; *Swigert* v. *People,* 154 id. 284; *Crerar* v. *Williams,* 145 id. 625; *Cook County* v. *Gilbert,* 146 id. 268; *Jimison* v. *Adams County,* 38 Ill. App. 52.

The legal status of the board of education of the city of Chicago is solely that of a representative and agent of the State of Illinois, and there is a marked distinction to be observed between a corporation which exists for purely municipal purposes, like the city of Chicago, and one which exists solely as an agent and representative of the sovereign power of the State for the purpose of carrying out the duties imposed upon the State by its constitution. Const. of 1870, sec. 1, art. 8; 1 Dillon on Mun. Corp. (4th ed.) secs. 24, 25; 1 Beach on Public Corp. sec. 6; *Finch* v. *Board of Education,* 30 Ohio St. 37; *Hill* v. *Boston,* 122 Mass. 380; *Waltham* v. *Kemper,* 55 Ill. 346; *Hollenbeck* v. *Winnebago County,* 95 id. 148; *Hedges* v. *Madison County,* 1 Gilm. 567; *Burch* v. *Hardwicke,* 30 Gratt. 24; *Elmore* v. *Drainage Comrs.* 135 Ill. 269; *Nagle* v. *Wakey,* 161 id. 387; *Backer* v. *Park Comrs.* 66 Ill. App. 507; *Comrs. of Highways* v. *Baumgarten,* 41 Ill. 254; *People* v. *Madison County,*

125 id. 334; *People* v. *Harper*, 91 id. 366; *Lange* v. *Soffell*, 33 Ill. App. 624; *Library Directors* v. *Arnold*, 60 id. 328.

Public policy demands that the scope of the Civil Service law shall be confined to its legitimate objects, viz., municipal officers and employees, there being absolutely no evidence of any intention on the part of the legislature to include purely State officers and agencies.

T. A. Moran, John W. Ela, Levy Mayer, and C. R. Holden, for appellees:

The terms of the Civil Service act expressly include the employees of the board of education. The act applies to "all places of employment in such city" excepting "boards of education" and "teachers in schools," thus indicating its meaning unmistakably. *People* v. *Baird*, 164 Ill. 535; Throop on Public Officers, secs. 26, 27, 29; *In re Whiting*, 2 Barb. 513; *Howe* v. *Taylor*, 24 Ill. 246; *Dutton* v. *Aurora*, 114 id. 138.

The board of education is, under the charter of the city of Chicago, part of its system of municipal government. Special Charter of Chicago of 1863-69; Tuley's Laws and Ordinances of Chicago, 1873, pp. 385, 550-554; *Heath* v. *Fuller*, 89 Ill. 312; *Speight* v. *People*, 87 id. 600; *Chicago* v. *Miller*, 80 id. 384.

The school laws are amendatory to the special charter of the city of Chicago as to the provisions affecting schools. *People* v. *Wright*, 70 Ill. 388; *Board of Water Comrs.* v. *People*, 137 id. 660.

The adoption of the general Incorporation act for cities and villages by the city of Chicago did not abrogate its special charter provisions as to schools. *Fuller* v. *Heath*, 89 Ill. 296; *Smith* v. *People*, 154 id. 58.

Aside from its status as fixed by the special charter of the city of Chicago, the board of education is not an independent body politic. *Board of Water Comrs.* v. *People*, 137 Ill. 660; *People* v. *Wright*, 70 id. 391; *Chicago* v. *People*, 80 id. 385.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The civil service commissioners of Chicago filed their petition in the circuit court of Cook county for a writ of *mandamus* to compel the board of education of the city to make requisition upon the civil service commission for certificates of eligible candidates for positions and places of employment classified under the Civil Service act, which said board was about to fill by appointment thereto, and to make such appointments from persons whose names should be certified by said commission. The board and its several members demurred to the petition, and contended that the Civil Service act does not apply to the board of education of the city of Chicago, and some of the defendants contended below, and contend here, that said act is unconstitutional. The trial court overruled the demurrer and awarded the writ.

It is wholly unnecessary on this appeal to consider further the constitutional question raised, inasmuch as this court has, since the judgment below was rendered, fully considered and decided that question in *People ex rel.* v. *Kipley*, 171 Ill. 44, and in *People ex rel.* v. *Loeffler*, 175 id. 585, and has held that the statute is not in conflict with the constitution. True, some additional reasons are advanced in this case, but we regard them as untenable. The only question, then, important to be considered or decided, is, does the Civil Service act apply to the employees of the board of education, or, rather, control such board in their employment or removal?

Section 3 of the act provides that "said commissioners shall classify all the offices and places of employment in such city, with reference to the examinations hereinafter provided for, except those offices and places mentioned in section 11 of this act. The offices and places so classified by the commission shall constitute the classified civil service of such city, and no appointments to any of such offices or places shall be made except under and according

to the rules hereinafter mentioned." Section 4 provides
that the commission shall make rules for examinations,
appointments and removals in accordance with the act.
Section 6 provides for free competitive examinations, of a
practical character, of all applicants for offices or places
in the classified service, except those exempted by sec-
tion 11. Section 10 provides for notice to the commission
by the head of the department in which a position in the
classified service is to be filled, and for the certification
by the commission to the appointing officer of the name
and address of the candidate having the highest standing
in the particular class or grade, and for the appointment
of the person so certified on probation, but who may be
discharged by such head of department during such pro-
bation upon reasons assigned in writing to the commis-
sioners and with their consent. Provision is also made
for temporary appointments to meet exigencies in the
public service. Section 11 is as follows: "Officers who
are elected by the people, or who are elected by the city
council pursuant to the city charter, or whose appoint-
ment is subject to confirmation by the city council, judges
and clerks of election, members of any board of educa-
tion, the superintendent and teachers of schools, heads
of any principal department of the city, members of the
law department, and one private secretary of the mayor,
shall not be included in such classified service." Section
12 provides that no officer or employee in the classified
service, appointed under the rules after examination,
shall be removed or discharged except for cause, upon
written charges and after an opportunity to be heard in
his own defense; that such charges shall be investigated
by or before the commission, or some officer or board ap-
pointed by it, and that the finding, when approved by the
commission and certified to the appointing officer, shall
forthwith be enforced by such officer, but that nothing in
the act shall be construed to limit the power of any offi-
cer to suspend a subordinate for a reasonable period, not

exceeding thirty days. There are other provisions not necessary to be referred to here.

A question is raised and discussed by counsel as to the meaning, in reference to the classified service, of the phrase in section 3, "all offices and places of employment in such city." It would do violence to the plain intent of the act to hold that offices or places of employment in the city in nowise connected with the offices or purposes of the municipal corporation are included in the act. It is plain from the scope and purpose of the statute, and the language employed in its different provisions, that offices and places of employment not so connected do not come within its provisions.

Taking this view, the appellants contend that the board of education of Chicago is a public corporation under the general school laws of the State, separate and distinct from the city government; that it is in no sense a department of the city government, but, even if not a public corporation, it is a State agency charged by public law with the duty of administering, within the limits of the city of Chicago, the school laws, and with the maintenance and management of the public schools in the city, and, as such public corporation or State agency, is not subject to the civil service department of the city government.

It is conceded, and is clearly true, that when the city was under its special charter, enacted, approved and in force February 13, 1863, (Private Laws of 1863, p. 40,) the board of education was one of the departments of the city government; but the position of appellants is, that substantially all of the provisions relating to schools in the act of 1863, and subsequent amendments, were repealed by the general school laws of 1872 (Laws of 1871-72, p. 700,) and 1889. (Laws of 1889, p. 239.) In 1875 the city of Chicago became incorporated under the general law for the incorporation of cities and villages, and its special charter is no longer in force, except so much

of it as is not inconsistent with the general law. It is provided in section 6 of article 1 of said general law, (Laws of 1871-72, p. 218; 1 Starr & Cur. Stat. 454,) that "all laws or parts of laws not inconsistent with the provisions of this act shall continue in force and applicable to any such city or village, the same as if such change of organization had not taken place." Now, the general law for the incorporation of cities and villages contains no provision whatever relating to schools. It is plain, therefore, that its adoption by the city of Chicago did not abrogate any of the provisions of its special charter relative to schools, unless, indeed, they, or some of them, are in other respects inconsistent with the general act of incorporation, (*Smith* v. *People ex rel.* 154 Ill. 58,) and no such inconsistency has been pointed out. Nor is it contended that the re-incorporation of the city abrogated the provisions of the special charter relating to schools, but that they were repealed, as before stated, by the general school laws above mentioned. It is not contended that they were expressly repealed, but by implication only, as being inconsistent with such general laws. We are of the opinion that the repealing sections of the acts of 1872 and 1889, and the language used in other sections of the acts, indicate an intention not to repeal any parts of the special acts except such as were inconsistent with such general acts. The language of said sections, after naming the statutes repealed, is: "And all other acts and parts of acts inconsistent with this act, and all general school laws of this State, are hereby repealed."

When the general School law of 1872 was in force, this court decided the case of *Fuller* v. *Heath*, 89 Ill. 296, and held that the city of Chicago had power, under former laws, to levy and collect taxes for school purposes. The "former laws" referred to were the provisions contained in the special charter and subsequent amendments. It was there said "that neither the adoption as its charter by the city of Chicago of the general law relating to

cities and villages, nor the passage of the general School
law, has modified or impaired the former laws authoriz-
ing the city of Chicago (as a public agency) to levy and
collect taxes for school purposes." It is not necessary
to determine, in precise terms, in this case, how far these
"former laws" have been modified in other respects by
the act of 1872, or how far they have been modified by
the act of 1889 operating as an amendment, but it is suf-
ficient, for the purposes of this case, if it appears that
such former acts relating to schools have not been so far
abrogated as to sever the connection which they created
between the board of education and the city government,
and to make the board an independent public corpora-
tion having full corporate powers distinct from those of
the city, or a mere agency of the State for the adminis-
tration of the school laws, disconnected from the munici-
pal government. The mere fact that the statutes of 1872
and of 1889, and the amendment of 1891, apply to the
school system of Chicago and the board of education, and
had or have the effect of modifying and amending the for-
mer school laws of that city, does not authorize the con-
clusion that the board is no longer a municipal agency.
The legislature knew, when it passed these acts, that
there was but one city in the State having more than
100,000 inhabitants, and that that city had as one of its
departments a board of education, and it is fair to as-
sume that if it was the intention to convert this body
into an independent corporation, or a mere State agency,
separate from the municipal government of Chicago of
which it formed a part, such intention would either have
been expressed or clearly implied from the language
used. But it appears that the statutes which are sup-
posed to have wrought such a change in the board of
education of Chicago contain no provision declaring such
boards to be bodies politic and corporate, as they do in
reference to school directors and other school authorities.
Many and greater powers are by statute conferred on the

city council, but it cannot be said for that reason that it alone is a corporate body.

The question, however, is not whether the board possesses corporate powers, and if so, what are their precise limitations, for, as said in *Board of Water Commissioners* v. *People ex rel.* 137 Ill. 660, "the mere fact that the legislature saw fit, for purposes of convenience and of administration, to give it (the board of water commissioners) a corporate existence and invest it with certain corporate powers, did not prevent it from being simply a branch or an agency, created for a special purpose, of municipal government. Without the active co-operation of the city council it would have been wholly unable to effect the objects of its creation." See, also, *McGurn* v. *Board of Education,* 133 Ill. 122, where this same board was spoken of as "an organization which, in some points of view, is to be regarded as a subordinate department of the city government, and in others as an independent municipal corporation." There is, of course, a broad distinction between this and the two cases cited, but they are pertinent, as showing that merely because a board is invested with certain corporate powers it is not necessarily separated from the municipal government; and even if the board has been invested with corporate powers, the question remains whether or not the former admitted status of the board of education as a department of the municipal government of Chicago has been so changed by subsequent legislation as to exclude it from the operation of a statute enacted to regulate the civil service of cities, and requiring the classification of all offices and places of employment in such cities, with certain enumerated exceptions, and thus forming what is designated as the classified service from which appointments must be made. And we are of the opinion that, even if the effect of the school legislation is to confer corporate powers on the board of education or to make it a State agency for certain purposes, still the change has not been such as to

disconnect it from the city government and to authorize
the courts to declare that the offices and places of em-
ployment under the board are no longer offices or places
of employment in or of such city.  Nor in so holding is it
necessary, or thought to be within the proper scope of
this case, to point out definitely each and all of the pro-
visions of the special charter relating to schools which re-
main in force.  Indeed, counsel on both sides have failed,
in their able and elaborate arguments, to point out for
our consideration the specific parts of the act of 1863,
and its amendments of 1865 and 1869, which it is con-
tended, upon the one hand, have been repealed, or upon
the other, continue in force; and counsel for appellants
say: "When we state that the school provisions of the
charter of 1863 have been repealed by the subsequent
general school legislation of the State of Illinois, we
mean simply to state that all of the *essential* provisions
relating to schools have been so repealed, without enu-
merating in detail unimportant matters like some of those
which have been discussed in the opinion of the circuit
court."  And further: "That the board of education of
the city of Chicago does not engage in this controversy
for the purpose of protecting the right to appoint a few
petty officers, such as clerks and janitors, insignificant in
number when compared with the whole body of approxi-
mately 6000 school employees, but they have presented
these questions to the court primarily in order that the
legal relations between the board of education of the city
of Chicago and the municipal government of the city of
Chicago may be fully and completely defined and deter-
mined."

It does not appear to us to be necessary in this case
for us to assume the labor suggested by counsel, but in
addition to what has already been said it seems to us suf-
ficient to say that the title to school lands remains in the
city as provided by the act of 1863; that the School law
of 1872 did not create the board of education of Chicago,

but recognized its then present existence, and changed and enlarged, in many respects, its powers and duties, but continued, as did the subsequent School act of 1889, its dependence, in many important matters, upon the city council. Thus, it was provided in the same language in both acts that "the board of education * * * shall have power, *with the concurrence of the city council: First—* To erect or purchase buildings suitable for school houses and keep the same in repair. *Second*—To buy or lease sites for school houses, with the necessary grounds. *Third* —To issue bonds for the purpose of building, furnishing and repairing school houses, for purchasing sites for the same, and to provide for the payment of said bonds; to borrow money on the credit of the city." By another section all conveyances of real estate must be made to the city for the use of schools, and that no sale of such real estate shall be made except by the city council upon the written request of the board. The board cannot levy or collect any tax; this is done by the city. The board is required to communicate to the city council, from time to time, such information in its possession as may be required, and to report to the council any suggestions deemed expedient or requisite in relation to the schools and the school fund, or the management thereof, and to recommend the establishment of new schools and districts. The school funds of all kinds are held by the city treasurer, subject, it is true, to the order of the board, but only upon its warrants countersigned by the mayor and city clerk. In *People ex rel.* v. *Roche*, 124 Ill. 9, it was held that a mortgage for purchase money of school land should be made to the city, and not to the board.

After a careful examination and consideration of the various statutes and decisions bearing upon the question, and the arguments of counsel, it seems clear to us that the board of education of the city of Chicago is still connected with, dependent upon, and to some extent a part of, the municipal government of that city, and, as such,

that its offices and places of employment fall within the operation of the Civil Service act. This view is strengthened, not only by the general language employed in the last named act, but also by the wording of section 11, which mentions among the officers excepted from the classified service, "members of any board of education, the superintendent and teachers of schools." The exclusion of a part indicates an intention to include the rest. If it was not the intention of the legislature to extend the operation of the Civil Service act to offices and places of employment in the school service it certainly would not have excepted a part, but would have excepted all or none.

It is next contended that the statute providing for the creation of a teachers' and employees' pension and retirement fund, in force July 1, 1895, is in conflict with the Civil Service act, if the latter act be held to apply to school employees, inasmuch as it provides that no teacher or other school employee elected by said board of education shall be removed or discharged except for cause, upon written charges, which shall be investigated and determined by said board, whose action and decision in the matter shall be final; that section 12 of the Civil Service act provides that such charges as grounds for removal shall be investigated by or before the civil service commission, or by or before some officer or board appointed by said commission for that purpose, and that the finding and decision, when approved by the commission, shall be certified to the appointing officer and shall be by him forthwith enforced. These acts were passed at the same session, the Civil Service act having been approved, with an emergency clause, March 20, 1895, and the Teachers' and Employees' Pension act June 21, 1895; but the Civil Service act did not become operative until after it was adopted by the electors of the city of Chicago and declared to be in force by the proclamation of the mayor, which proclamation was issued July 1, 1895. It is

the duty of the courts to construe the two acts so as to give effect to both, as far as may be done. But it is apparent that the two acts are inconsistent, so far as the power of removal of employees of the board is concerned. There is, however, no other repugnancy between them. Giving effect to the provision of the Pension act as the latest expression of the legislative will, we are of the opinion that the circuit court was right in holding that the board of education has the power to investigate and determine charges against its employees and to remove or discharge them, but that in all other respects the Civil Service act applies to such employees according to its terms. This exception is necessarily created by the later act and may well have been made because of the purpose of the act to create, and preserve under the control principally of the board of education, for teachers and employees, a pension and retirement fund. But whatever the purpose may have been, the act must have its intended effect.

Finding no error the judgment is affirmed.

*Judgment affirmed.*