## The People of the State of Illinois ex rel. City Council of the City of Chicago, Appellant, v. Board of Education of the City of Chicago, Appellee.

### Gen. No. 22,226.

1. MUNICIPAL CORPORATIONS, § 45*—*when city council power to examine records of board of education as to expenditures.* Under Hurd's Rev. St., ch. 122 (J. & A. ¶ 10022 *et seq.*) and the special charter of 1863 of the City of Chicago, the duty of control of expenditures of the board of education by the city council necessarily involves knowledge of receipts and expenditures and the right to obtain this knowledge through examination of records of the board of education.

2. MUNICIPAL CORPORATIONS, § 45*—*when city council entitled to access to records of board of education as to expenditures.* The duty of the Chicago Board of Education to communicate to the city council such information as may be required does not deprive such council of the right of access to the original sources of information from records of such board.

3. MUNICIPAL CORPORATIONS, § 45*—*when city council may examine records of board of education as to expenditures.* While Act of 1909, Hurd's Rev. St. ch. 122 (J. & A. ¶ 10022 *et seq.*), to establish and maintain a system of free schools, gives the Board of Education of the City of Chicago exclusive right of management of many details of the schools, it has not taken from the city council the right, under the special charter conferred in 1863, to examine the original records of receipts and expenditures of such board.

4. MUNICIPAL CORPORATIONS, § 45*—*when city council may examine records of board of education as to expenditures.* The animus or motive of the Chicago City Council in seeking to make an examination of the records of receipts and expenditures of the board of education of such city cannot affect its right to so do.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1916. Reversed and remanded with directions. Opinion filed March 7, 1916.

DONALD R. RICHBERG, for appellant.

ANGUS ROY SHANNON, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

Upon relation of the City Council of the City of Chicago a petition for mandamus was filed, praying that the Board of Education of Chicago be commanded to give to the city council full and complete access to all books, records, documents and information concerning the receipt and expenditure of moneys in possession of the board. To this a general demurrer was filed and subsequently sustained, and the petition ordered dismissed. Petitioners elected to stand by their petition, and by this appeal seek the reversal of the order of the court.

Is the city council empowered by law to examine the records of receipts and expenditures of the money of the board of education? We hold that it is.

Under the special charter of Chicago, year 1863, the council was given power (quoting from *People v. Healy,* 231 Ill. 629, 635) "to manage the school funds, school houses and school matters generally, and the board of education only had control subject to the regulations prescribed by the common council." Under section 2, chapter 9, of the special charter, the council was given power to levy and collect a school tax, and under the Constitution adopted in 1870, the council was given power to appropriate moneys for school purposes. In 1872 the Legislature passed an act entitled: "An Act to establish and maintain a system of free schools," approved April 1, 1872. In 1875 the City of Chicago became incorporated under the general law for the incorporation of cities and villages, and it was held in *Brenan v. People,* 176 Ill. 620, that the special charter thereby became no longer in force, except so much of it as was not inconsistent with the general law. The Cities and Villages Act contains no provision relating to schools; hence the provisions of the special charter relating to schools were not abrogated, and the division

of powers between the city council and the board of education was to be determined under the provisions of the special charter and of the School Act of 1872. In *People ex rel. Neal v. Roche*, 124 Ill. 9, the Supreme Court stated this division of powers as follows:

"It seems clear, from all the legislation on the subject, it was the intention of the legislature the city, in cities having over one hundred thousand inhabitants, should have the title to all real estate held for school purposes, and the city treasurer should have the custody of all school funds, no matter from what source derived. The board of education in such cities is given no independent powers as to the real estate held or to be purchased for school purposes. Whatever the board can do in reference to buying or leasing sites for school houses, or issuing bonds for the erection of buildings thereon, can only be done 'with the concurrence of the city council.' The powers and duties, the board may exercise, independently of the city council, relate mostly to furnishing school houses, the employing of teachers, and the management of schools generally. But all school property and funds are placed in and under the care of the city council or some city officer."

This division of powers was not changed by the passage of the School Act of 1889. *Brenan v. People,* 176 Ill. 620.

In 1909 the Legislature passed an act entitled: "An Act to establish and maintain a system of free schools," approved and in force June 12, 1909, Hurd's Ill. St., ch. 122 (J. & A. ¶ 10022 *et seq.*), which is the statute now in force. This act did not substantially change the respective powers of the city council and of the board of education from the status fixed by the prior statutes. Sections 128 to 150 (J. & A. ¶¶ 10163-10185), inclusive, of the present statute provide for the organization and regulation of the "boards of education in cities of 100,000," and these provisions apply to the Board of Education of Chicago. Under the

present statute the board is given exclusive control
of the management of the schools with reference to
providing furniture for school buildings, hiring rooms
for use of the board or schools, employing teachers
and fixing compensation, prescribing school books,
establishing rules for government, and other similar
details stated in some twenty-four paragraphs in sec-
tion 132 (J. & A. ¶ 10167) of the statute. With the
concurrence of the city council the board has power
(1) to erect or purchase buildings for school houses
and to keep them in repair; (2) to buy or lease school
houses with grounds, or condemn land for the same
"in the name of the city in trust for the use of
schools"; (3) to borrow money upon the credit of the
city. The statute also provides that the city shall take
title to all real estate, and no sale shall be made except
by the city council upon written request of the board;
that all moneys raised by taxation "shall be held by
the city treasurer as a special fund for school pur-
poses, subject to the order of the board of education,
upon warrants to be countersigned by the mayor and
the city comptroller or, if there be no city comptroller,
by the city clerk." The statute in terms specifically
negatives any implication that the board has author-
ity to levy or collect taxes, this power remaining in
the city council under the special charter. It is made
the duty of the board to report to the city council, from
time to time, any suggestions they may deem expedient
or requisite in relation to the schools and the school
fund, or the management thereof, and generally to
recommend the establishment of new schools and dis-
tricts; to prepare and publish an annual report, which
shall include the receipts and expenditures of each
school, specifying the source of such receipts and the
object of such expenditures; "to communicate to the
city council, from time to time, such information as
may be required." It is also provided that "no power

given to the board of education shall be exercised by the city council of such cities.''

Upon the city council is laid not only the duty of furnishing funds for school purposes, but also the duty of control of expenditures in a large measure. It is self-evident that such a duty cannot be performed with intelligence and judgment unless the council is fully and accurately informed as to the requirements for school purposes. This necessarily involves knowledge of the receipts and expenditures, and the right to obtain this knowledge through examination of the records of the board inheres in the mutual relations of the parties and must be upheld unless the statute has clearly closed this avenue of information.

Does the statute, in terms or by implication, forbid the city council to obtain the needed information by first-hand examination of the records? There is nothing in the general scheme of the statutory provisions to indicate that this is so. Rather the requirement of concurrence by the council in financial matters indicates to the contrary. Neither do we think the duty of the board to communicate to the city council such information as may be required negatives the right of the council to examine the basis of the communication. The obligation to convey information to the council, when requested, is a rule of convenience and necessity in the transaction of their concurrent business. It serves a reasonable and proper purpose, but it would require a strained construction to give this rule of convenience the force of an inhibition of the inherent right of the council to have access to the original sources of information.

Our conclusion is that under its special charter the city council has complete control of the schools except as specifically modified by the statute; that the statute, while giving to the board exclusive right of management of many details of the schools, has not taken from the council the right to examine its records of receipts

and expenditures; that the animus or motive of the council in seeking to make such examination cannot affect its right (*Murphy v. Chicago, R. I. & P. Ry. Co.,* 247 Ill. 614); that the council is not required to consider a communication from the board as its sole and ultimate source of information. It is not important whether the field of the council's financial action be small or large; whatever it is, the intelligent exercise of the council's powers will be promoted by knowledge even of those details over which it has no direct control.

We hold that it was error to sustain the demurrer, and the order dismissing the petition is reversed and the cause remanded with directions to overrule the demurrer and for further proceedings not inconsistent with what is herein expressed.

*Reversed and remanded with directions.*