GEORGE E. BRENNAN, Receiver,

*v.*

THOMAS GALLAGHER.

*Opinion filed October 25, 1902—Rehearing denied December 4, 1902.*

LOAN ASSOCIATIONS—*when former stockholder is entitled to preference as a creditor.* A former stockholder in a loan association who surrendered his stock at maturity and settled with the association, but deposited a portion of the amount received with the association under its contract to pay him six per cent for the use of the money, is entitled, in case of subsequent insolvency of the association, to be treated, in a proceeding in equity, as a creditor, and not as a stockholder, and is entitled to the amount deposited, with legal interest from date of demand, since, even if the contract is *ultra vires,* it is not *malum in se* nor *malum prohibitum.* (*National Home Building Ass.* v. *Home Savings Bank,* 181 Ill. 35, and *Christopher Columbus Building Ass.* v. *Kriete,* 192 id. 128, distinguished.)

BOGGS, J., dissenting.

*Gallagher* v. *Brennan,* 99 Ill. App. 81, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

The International Building, Loan and Investment Union of Chicago was in 1898 found insolvent in the superior court, and a decree entered dissolving it, ordering its assets administered upon and distributed, and appointing receivers. February 6, 1900, the receivers filed their petition showing claims filed by stockholders and others, and praying that the claimants be required to appear and prove their claims. Among these claims was that of appellee, Thomas Gallagher. It appears from the evidence that in October, 1888, he became a stockholder in the union, taking fifty shares of stock of the par value of $5000, which matured in December, 1894. At that time he had a settlement and accounting with the union and surrendered his certificate of stock, which was canceled, and he gave a receipt in full for the $5000.

It appears that there was due him then $4410.25, $610.25 of which amount was paid him by check of the union, and he was induced to deposit the balance of $3800 with the union, and was given a pass-book, showing the union in account with Gallagher, with this entry: "Dr. Dec. 1, 1894.—Dept. 6%, 3800." The pass-book also shows that the union charged itself, on July 1, 1895, with interest to date, $133, which amount was paid to Gallagher July 15. No further entries appear in the pass-book. The books of the union showed entries made of these transactions. When he left this balance of $3800 with the union he was told by McCoun, who acted as book-keeper and cashier, that the money would be paid to him on four or five days' notice, and while it remained with the union he would receive six per cent interest. At that time appellee was also the owner of twenty other shares of stock, which matured and were surrendered by him, and for which he received his money some time in 1895. Appellee made no agreement that any part of the $3800 deposited by him was to be used to pay his installments on this latter stock, and none of it was used for that purpose.

Section 11 of article 13 of the by-laws of the union, printed on the stock certificate, was as follows: "Any shareholder may pay his installments, interests and premiums in advance, or deposit with the union a certain sum to be used for such payments as they may fall due, and the union will receipt for the same and notify when said sum is exhausted."

On the pass-book were printed the following rules: "Deposits received of one dollar and upwards from members only. Members may deposit money, subject to withdrawal on demand. Money so deposited bears interest at six per cent per annum on six months' deposit. * * * Any shareholder desiring to avoid being fined can deposit any amount, from one dollar upward, with the union. When there is in the hands of the secretary an amount equal to the monthly due on the stock in the name of

the shareholder there will be no fines charged against the stock. By keeping up your monthly payments and adding to this account you will always have available funds in the time of need. * * * No agent is authorized to receipt special deposits."

The superior court found that appellee had paid to the union, upon account of shares of stock owned by him, the sum of $3809, and allowed his claim for that amount as a stockholder, but not as a preferred claim. From this order appellee appealed to the Appellate Court for the First District, where the order was reversed, and found that he was entitled to $3800, with interest from July 1, 1895, at five per cent, and that he was one of the preferred creditors. From this judgment the appeal was taken to this court by the sole remaining receiver, George E. Brennan.

PAM, CALHOUN & GLENNON, for appellant.

ALEXANDER SULLIVAN, for appellee.

Per CURIAM: The question here is one between the appellee and the receiver and other creditors of the Investment Union. The receiver and the other creditors do not deny that appellee is entitled to the balance claimed by him of $3800 from the Investment Union if there are assets enough out of which it and other claims can be paid, but only that he is to be treated as a stockholder in the union in reference to said claim, and not to be paid until the general creditors of the union shall first have been paid in full, and then to share with the other stockholders. This contention was sustained by the circuit court but its decree was reversed by the Appellate Court, the latter court holding that appellee should have been treated as a general creditor, and not as a stockholder. We are disposed to agree with the holding of the Appellate Court.

The first contention of appellant is, that the balance of $3800 must be treated as a deposit or advance payment

by appellee to the union, to meet the dues and payments as they would fall due on the $2000 of other stock held by appellee, under section 11 of article 13 of the by-laws set out in the preceding statement of the case,—and this was the view taken by the circuit court. The difficulty with this view is, that it is not supported by the evidence. Nothing was said when the money was left with the union to the effect that it should be so used, but, on the contrary, it was expressly agreed that appellee would be entitled to receive his money at any time after notice and demand of two or three days, and the printed rules show that the union did so receive money from its members. Appellee surrendered his stock, which was canceled, and he gave his receipt to the union for the full amount of its face value,—that is, $5000,—and received in return a pass-book showing the union in account with him, with this entry: "Dr. Dec. 1, 1894.—Dept. 6%, 3800." The pass-book also shows that the union charged itself on July 1, 1895, with $133 as interest to that date, which amount was paid to the appellee on July 15. The books of account of the union also showed similar entries of these transactions, and it is clear that the money went into the general account of the corporation, which received the benefit of it. It would be unreasonable to suppose that appellee would deposit $3800 out of which to make advance payments on a demand for stock of only $2000, and more unreasonable still, if such was the contract, that he would afterward, while the $3800 was still on deposit, pay out of his other funds such advance payments until the $2000 was fully paid, and would then surrender and receive the face value of such stock, still leaving the $3800 on deposit. We cannot find any basis in the evidence to sustain the decree of the trial court.

The next contention of appellant is, that the $3800 was paid by appellee and received by the union as a deposit, and that the union had no power, by its charter, to receive such deposit; that the contract in that regard was

*ultra vires* the corporation and wholly void, and, therefore, that there was no liability on such contract to appellee. In support of this view appellant cites *National Home Building and Loan Ass.* v. *Home Savings Bank,* 181 Ill. 35, and *Best Brewing Co.* v. *Klassen,* 185 id. 37. The union had power "to raise the funds to be loaned only among members of such association." But we regard it as unnecessary to determine whether the contract by which the union retained or received appellee's money and agreed to pay him interest at the rate of six per cent was void or not, for he was held by the Appellate Court entitled only to the principal amount and five per cent interest. If it be conceded that the contract under which the union received appellee's money was *ultra vires* the corporation, it by no means follows that it could receive and appropriate to its own use appellee's money and incur thereby no liability to him. Simply because it undertook to do what it was not authorized to perform, and upon such undertaking received money from appellee which it had no right to receive, does not exempt it from all liability, but it is in duty bound to refund what it has received, upon demand. The contract being only *ultra vires,* and not *malum in se* or *malum prohibitum,* and the corporation having received money under it which in equity and good conscience belongs to appellee and which it ought to pay over to him, it is liable in an action for money had and received, with interest at the legal rate from demand made. Such an action would not enforce or even recognize the contract, but would disaffirm it. (27 Am. & Eng. Ency. of Law, 373.)

This case is materially different from *National Home Building and Loan Ass.* v. *Home Savings Bank, supra;* and even if the doctrine of estoppel could not be invoked under the authority of that case, it is clear that it was not intended by anything there said to exempt corporations from all liability for benefits received by them under contracts void, because *ultra vires* only.

This was a proceeding in equity, and in the application of equitable principles appellee should have been treated like other creditors of the corporation, and not as a stockholder, in respect to his claim. The union received the money and so entered it on its books, and has had the use and benefit of it. The case differs in this particular from the case of *Columbus Building Ass.* v. *Kriete*, 192 Ill. 128, in which Kriete and his class had deposited their moneys with the secretary, who embezzled the funds and they never came to the hands of the association at all. Nor does appellee belong to Truka's class in that case, for, as we have held, he had received his money and surrendered his stock.

The Appellate Court remanded the cause to the superior court, with directions to that court to enter a decree in favor of Gallagher for $3800, with interest from July 1, 1895, at five per cent per annum, and that he be preferred over the stockholders. The evidence shows that no demand was made upon the International Building, Loan and Investment Union by Gallagher for the payment of said sum of $3800 until August 15, 1896. He was not entitled to interest until after demand was made for the payment of said money. The Appellate Court therefore erred in allowing interest from July 1, 1895, instead of from August 15, 1896.

The judgment of the Appellate Court and the decree of the superior court are both reversed and the cause is remanded to the superior court, with directions to enter a decree in favor of Thomas Gallagher for the sum of §3800, with interest from August 15, 1896, at five per cent per annum, and that he be preferred over the claims of the stockholders for money paid on shares scheduled in the decree appealed from.

*Reversed and remanded, with directions.*

Mr. JUSTICE BOGGS does not concur.