### EDWARD B. LEIGH
*v.*
### THE AMERICAN BRAKE-BEAM COMPANY.

*Opinion filed October 26, 1903—Rehearing denied December 2, 1903.*

1. CORPORATIONS—*when party is bound to inquire into agent's authority.* One who deals with an officer of a corporation knowing that the officer is assuming to act for it in a matter wherein his interests and those of the corporation are adverse, is bound to inquire into the officer's authority.

2. SAME—*corporation cannot loan money unless authorized by charter.* A corporation organized to manufacture and sell railroad appliances and distribute the dividends as profits has no power to loan money nor to authorize or ratify any contract made by its president to loan corporate funds.

3. SAME—*effect where party receives money under ultra vires contract.* One who receives from a corporation, under an *ultra vires* contract, money which in equity and good conscience belongs to the corporation, is liable in an action by the corporation for money had and received if the contract is not *malum in se* or *malum prohibitum.*

*Leigh* v. *American Brake-Beam Co.* 107 Ill. App. 444, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

JOHN P. AHRENS, and DAVID S. GEER, for appellant.

DEFREES, BRACE & RITTER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee, the American Brake-Beam Company, a corporation organized under the laws of this State to manufacture and sell or otherwise dispose of brake-beams and other railroad appliances, brought this suit in assumpsit in the circuit court of Cook county against the appellant, Edward B. Leigh. The declaration, as originally filed, contained two special counts for the recovery of alleged loans of money by the plaintiff to the defendant. The first alleged that on June 26, 1899, plaintiff loaned defendant $1000 by means of its check of that date, payable to the order of defendant, drawn on the American Trust and Savings Bank of Chicago for $1000, which check was delivered to defendant and endorsed by him and paid to him by said bank. The second set forth a like transaction on August 2, 1899, by which $2500 was loaned by plaintiff to defendant by means of a similar check on said bank, payable to the order of defendant, endorsed by him and paid. The court sustained a demurrer to these counts, and they were eliminated from the case. The declaration also contained the common counts, including a count for money had and received by the defendant for the use of the plaintiff. To the common counts the defendant pleaded the general issue. Upon a trial the court denied a motion of defendant to instruct the jury to find the issues in his favor, but gave an instruction to find the issues for the plaintiff and

assess its damages at the amount of the checks, with interest at the statutory rate of five per cent. The jury accordingly found the issues for plaintiff and assessed its damages at $3916. The court, after overruling motions for a new trial and in arrest of judgment, entered judgment for said amount and costs, and the Branch Appellate Court for the First District affirmed the judgment.

At the trial, plaintiff offered in evidence two checks drawn by it on the American Trust and Savings Bank of Chicago, signed by W. A. Tichenor, treasurer, and countersigned by Henry D. Laughlin, general manager, payable to the order of defendant, one dated June 26, 1899, for $1000, endorsed by the defendant and paid June 28, 1899, and the other dated August 2, 1899, for $2500, endorsed by the defendant and paid August 4, 1899, and also the testimony of a witness that he requested payment from the defendant of the amount of the checks, and interest. The defendant offered evidence that he was interested with George Atkins, George Milliken and Henry D. Laughlin, the president and general manager of the plaintiff, in the Noonday mining property, and that Laughlin advanced the money represented by the checks to put into the mining property for the benefit of those four, by giving the checks of the corporation to the defendant. The court ruled that the evidence was not admissible, in the absence of proof that Laughlin had some other authority than that implied from his position as president and general manager of the corporation, to loan the money of the corporation or pay it to men who knew it was corporate money that was being paid or invested for the individual benefit of the officer, and that unless such action was authorized by the board of directors or stockholders of the corporation it would not be bound by the act. The defendant then stated what he offered to prove, substantially as follows: That he and Laughlin, with Atkins and Milliken, were jointly interested in mining enterprises; that Laughlin offered

to furnish Atkins and Milliken money, up to $10,000, to
carry on the work of those enterprises; that Laughlin
said he could obtain money from his corporations, one
of which was the plaintiff, and would furnish such money
to Atkins and Milliken; that the checks were given to
defendant for the purpose of using the money in that
way for the joint benefit of Laughlin, Atkins, Milliken
and defendant in their private enterprise, to which the,
plaintiff was not a party and in which it was not inter-
ested in any way; that the moneys were transferred by
defendant to Atkins and Milliken for said purpose and
applied to that object, and that Laughlin was the presi-
dent of the plaintiff and the owner of fifteen-seventeenths
of its stock.    There was no evidence tending to show
that Laughlin had any authority from the stockholders
or board of directors to take the money of the corpora-
tion and deliver it to the defendant or any one else for
any such purpose.    The court refused to admit the prof-
fered evidence.

The ruling was right.    It need scarcely be said that
the president and general manager of a corporation has
no authority, by virtue of his office, to appropriate the
money of the corporation to the use of himself and his
partners in his private business.    The defendant had full
notice, both by the checks and the agreement which he
offered to prove, that the money of the plaintiff was be-
ing taken by its president, acting in the interest of him-
self and his associates, to be used for their joint benefit,
and not for any purpose or business of the corporation.
The checks were the checks of the corporation drawn
against its funds in the bank, and they did not purport
to be checks of Laughlin.    They were signed by the
treasurer of the corporation and were merely counter-
signed by Laughlin as general manager.    Although a
corporation must act by agents, the general power of
an agent does not extend to a case where he is the per-
son interested on the other side.    Generally, an officer

or agent of a corporation cannot act for the corporation and himself at the same time, and the position of Laughlin in the transaction was utterly inconsistent with the idea that he represented the corporation. Every person dealing with an officer of a corporation who assumes to act for it in matters in which the interests of the corporation and officer are adverse, is put upon inquiry as to the authority and good faith of the officer. (*Moores* v. *Citizens' Nat. Bank*, 111 U. S. 156; *Santiago Innerarity* v. *Merchants' Nat. Bank*, 139 Mass. 332.) The plaintiff was not bound by any agreement of Laughlin to take its moneys and advance them to the defendant to be used in their private enterprise in which the corporation had no interest, and defendant admitted that he had full knowledge that the checks were not given for any corporate purpose, and therefore knew the want of power of Laughlin to bind the corporation. In the absence of proof of express authority from the plaintiff the evidence was not admissible.

Furthermore, the alleged contract, by which Laughlin was to take the moneys of the plaintiff and loan them for use in the private enterprise, was beyond the power of the corporation, which was organized to manufacture and sell or otherwise dispose of brake-beams and other appliances. The business of loaning money was not included in the powers granted to the corporation, and no action would lie upon the contract made in violation of the law. A corporation cannot make loans of money unless the exercise of its chartered powers ordinarily includes such loans. The business of this corporation was to invest and use its capital in making and selling brake-beams and other railroad appliances and to distribute its profits as dividends, and it had no power to loan its money or capital. (Cook on Stock and Stockholders, sec. 690.) Any contract to loan the moneys of the corporation would be illegal and void, and the courts can afford no legal remedy upon an illegal and void contract.

(*McNulta* v. *Corn Belt Bank*, 164 Ill. 427; *National Home Build-ing and Loan Ass.* v. *Home Savings Bank*, 181 id. 35; *Best Brewing Co.* v. *Klassen*, 185 id. 37; *Fritze* v. *Equitable Building and Loan Society*, 186 id. 183.) No action could be brought on the alleged contract even if the corporation had at-tempted to authorize it, and neither could it be made the ground of a defense.

That rule of law, however, does not prevent a recov-ery from the defendant of the moneys of the plaintiff received by him. Although a party is not liable to pay according to a contract which is *ultra vires*, that fact is not permitted to work injustice where the law can afford a remedy without enforcing the illegal contract, and the courts will give relief where it can be given independ-ently of the contract. It would be unjust to hold that one who has received money or property under a con-tract which is *ultra vires* need not account for it because the contract was illegal, but the law implies a contract to return what has been received. Where a contract is not *malum in se* or *malum prohibitum*, and it has been exe-cuted or benefits have been received, the party benefited, whether the corporation or individual, will not be per-mitted to retain the fruits of the transaction without compensation. It has sometimes been said that where the contract has been in good faith fully performed by one party, the other party, who has had the benefit of the performance of the contract, will be estopped to plead its invalidity. (*Bradley* v. *Ballard*, 55 Ill. 413; *Darst* v. *Gale*, 83 id. 136; *Kadish* v. *Garden City Building Ass.* 151 id. 531.) Although this has been said in cases where the contract was not *ultra vires* in the proper sense, and the language was not, perhaps, strictly accurate, it was in-tended to declare the sound and wholesome doctrine that a party cannot retain the benefits, money or property received under a contract which is void merely for want of power to enter into it, without making compensation therefor. Where a contract is *ultra vires,* and a corpo-

ration has received money under it which in equity and good conscience belongs to another and which it ought to pay over, it is liable for it in an action for money had and received, with interest after demand. (*Brennan* v. *Gallagher*, 199 Ill. 207.) The converse of the proposition is equally true, and an action for the recovery of the money would not enforce or affirm the original contract, but would disaffirm it. (27 Am. & Eng. Ency. of Law, 376.) As said by the Supreme Court of the United States in *Central Transportation Co.* v. *Pullman Palace Car Co.* 139 U. S. 24: "The action is not maintained upon the unlawful contract nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract." The recovery in this case was for moneys had and received by the defendant for the use of the plaintiff, and this action will lie whenever one person has received money which in justice and right belongs to another and which should be returned. It is an equitable action to recover back money which the defendant ought to refund. (*Allen* v. *Stenger*, 74 Ill. 119; *Wilson* v. *Turner*, 164 id. 398.) In any view of the case the evidence offered by the defendant was not admissible.

It is further contended that the court erred in rejecting evidence tendered by the defendant which would have shown that Laughlin had paid to Leigh the amount of the second check, $2500. The evidence consisted of a copy of an account between Laughlin and the plaintiff kept by him, or under his direction, in the books of the plaintiff. On this account the last check was charged to him, and it contained credits to him of large sums of money. On the same day that the check was given there was a credit of $25,000, with no indication what it was, and there were large credits at other times. There was nothing save the copy of an account to show that Laugh-

lin was entitled, as against the plaintiff, to the credits in his favor, or that the corporation knew anything about them or ever assented to them. There was no evidence tending to prove that any other representative, officer or stockholder had ever seen or approved the account, or tending to show that the account had ever been settled or adjusted. Laughlin was not a party to this suit and would not be bound, and the court could not go into collateral questions involving the adjustment of unsettled accounts between him and the corporation and their equities or respective rights. Although Laughlin was the principal stockholder, he and the corporation must be regarded as entirely distinct in the action at law, although a court of equity will, when necessary for the protection of equities, remove a mask or look behind it for the real parties in interest. The offer was simply to show that the president of the corporation had made an account between himself and it, crediting himself with large sums and charging himself with this check. To have permitted defendant to have introduced the check would have been to let in collateral issues which could not have been tried in the case. The court did not err in excluding the document from the jury. Defendant admitted that he received the checks from Laughlin; that he collected the money and paid it out in the personal ventures of himself, Laughlin, Atkins and Milliken, in which the plaintiff was in nowise concerned. The evidence did not tend to show that Laughlin had returned the money to the plaintiff, or that it accepted payment from him or his obligation to pay it. There being nothing to show a defense, the court did not err in directing the jury to find the issues for plaintiff.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*