## Louis Grollman, Trustee, Appellee, v. Montgomery Ward & Company, Appellant.

## Gen. No. 17,362.

1. APPEALS AND ERRORS—*waiver of peremptory instruction.* Where defendant in an action for goods sold introduces evidence after plaintiff's evidence in chief was taken, it waives its right to insist on its motion for peremptory instruction offered at the close of plaintiff's evidence in chief.

2. APPEALS AND ERRORS—*question to be determined.* Where in an action for goods sold, defendant's motion for a peremptory instruction at the close of plaintiff's evidence in chief is denied, and plaintiff's motion for a directed verdict at the close of all the evidence is granted, the question presented on appeal is on the whole record, does the whole of the evidence for both parties sustain plaintiff's judgment?

3. TRIAL—*right to direct a verdict.* A jury cannot be legally instructed peremptorily to return a verdict against a plaintiff when the evidence tends to prove every material part of the declaration; nor can the court direct a verdict against the defendant when the evidence tends to establish every material element of the defense.

4. PRINCIPAL AND AGENT—*presumption where agent is contracting in his own interest.* When an agent is contracting in his own interest, and to the probable detriment of his principal; and by the contract he is agreeing to pay his own debt to the third party out of the money or property of his principal, it will not be presumed that the agent will transmit to his principal the full particulars of such transaction, or that the principal authorized such a transaction.

5. CORPORATIONS—*power to ratify acts of agents.* Where a sales agent of a corporation sells goods to a third person and by the contract agrees to pay his own debt to the buyer out of the money or property of his principal, the contract is binding on the principal acquiescing or ratifying the same, unless the doctrine of *ultra vires* applies.

6. CORPORATIONS—*power to ratify contract of sales agent.* Where a sales agent of a corporation organized to manufacture and sell farm implements, sells goods to a third person and by the contract agrees that the buyer need pay only a part of the purchase price and that the agent, as liquidating his own debt to the buyer, will pay the remainder, the corporation has the power to ratify such an arrangement, and its creditors cannot complain unless the arrangement is shown to be in fraud of their rights.

7. CORPORATIONS—*right of creditors to manage business.* Creditors

have no power to dictate or interfere in the management of a corporation's business, and epecially in business transacted long before their debts had an existence.

8. BANKRUPTCY—*rights acquired by trustee.* Where a sales agent of a corporation contracts with a buyer that the buyer need pay only a certain part of the purchase price and that the agent, as liquidating his own debt to the buyer, will pay the remainder, and the arrangement is ratified by the corporation, in an action by its trustee in bankruptcy against the buyer, the trustee stands in no better position to attack the arrangement than would the bankrupt company.

9. INTEREST—*when no unreasonable and vexatious withholding of payment.* Where a principal ratifies a contract with a buyer whereby the sales agent agrees to pay a part of the purchase price, mere delay in making payment of the purchase price that the agent assumed which the buyer honestly believes he does not owe and making a defense to a suit by the principal for such purchase price, does not amount to such an unreasonable and vexatious withholding of payment as to authorize the allowance of interest.

Appeal from the Municipal Court of Chicago; the HON. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed June 30, 1913. Rehearing denied July 24, 1913.

GEORGE P. MERRICK, for appellant.

HELMER, MOULTON, WHITMAN & WHITMAN, for appellee.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

Montgomery Ward & Company have appealed from a directed verdict and judgment by the court for $3,996.13 in favor of Louis Grollman, trustee in bankruptcy for Sycamore Foundry Company, for goods sold and delivered to appellant.

The verdict of the jury was directed on motion of appellee at the close of all of the evidence. Appellant moved the court at the close of appellee's evidence, and again at the close of all the evidence, to direct a verdict in its favor. By introducing evidence after appellee's evidence in chief was taken, appellant

waived its right to insist on its motion for a peremptory instruction at the close of appellee's evidence in chief. The question now is on the whole record, does the whole of the evidence for both parties sustain appellee's judgment? *Britton v. St. Louis Transfer Co.,* 155 Ill. App. 317, and cases therein cited.

The entire evidence in the record for both appellee and appellant proved without question that Sycamore Foundry Company sold and delivered goods to appellant from February 24, 1906, to June 4, 1906, for the agreed total invoice price of more than $21,000. It is admitted by appellant that fifteen per cent. of that agreed total price, $3,286, has never been paid by appellant. The judgment includes said balance, and five per cent. interest thereon from June 4, 1906, the date of the last purchase, to September 30, 1910, the date of the trial, or $710.13. The judgment of the court is, therefore, sustained by the record, unless appellant's claim that appellee was not entitled to interest, or that the evidence introduced tended to prove a complete defense to the whole of appellee's demand, is also sustained by the record. Appellant's defense in bar was that it had paid to the foundry company all that it ever agreed to pay for the goods, that is to say, that it paid by agreement eighty-five per cent. of the agreed price of all goods sold and delivered to it by the foundry company, and that that company by agreement was to look solely to Frank C. Patton and Frank C. Patton Company for the remaining fifteen per cent. of the purchase price of said goods. The undisputed evidence in this record tending to establish that defense was given mainly by the witness, Frank C. Patton, who testified, in substance, that Frank C. Patton Company had been engaged at Sycamore, Illinois, for many years prior to February, 1906, in manufacturing and selling to the trade agricultural implements; that his company for years had sold from fifty to seventy-five per cent. of its output of farming implements to appellant, and

that having become financially embarrassed he borrowed money from appellant from time to time for his own or his company's benefit and repaid the same by allowing appellant to deduct fifteen per cent. from the purchase price of the goods sold to appellant for the Patton Company, and to apply the discount on his indebtedness to appellant, and that this course of dealing continued until February 9, 1906, when witness borrowed $7,500 of appellant to be paid in the same manner; that in November, 1905, Sycamore Foundry Company was organized and in February, 1906, bought out the business of the Frank C. Patton Company and leased its plant at an agreed rental of $10,000 a year, but the Frank C. Patton Company retained much of its stock of merchandise and continued to sell therefrom until in April, 1906, when it was adjudged a bankrupt; that all the loans he ever secured of Mr. Thorne (vice president and general manager of appellant) were secured by personal note, and that on February 9th either Mr. Thorne or he stated that "we would handle the $7,500 loan the same as we had previously," and that neither of them on that date had any reason to believe that the Frank C. Patton Company would not continue in business; that when Sycamore Foundry Company began manufacturing and selling farming implements in February, 1906, he became their sales agent and when he next visited appellant (February 24th) he told Mr. Shaw, manager of its implement department, that the new foundry company did not assume any of the liabilities of the old concern; that it had to be a clean, new deal, but that he would switch fifteen per cent. of the sales to appellant by the Sycamore Foundry Company and arrange that the Frank C. Patton Company should pay that discount to Sycamore Foundry Company and that appellant would only have to pay the usual eighty-five per cent. of the invoice price and credit his account with the discount; that he did this as an individual and as a representa-

tive of the Sycamore Foundry Company and delivered goods to appellant under that arrangement until it was discontinued a short while after Frank C. Patton Company became a bankrupt; that he told Mr. Shaw that the Frank C. Patton Company was going to remain in business as a holding corporation and that it had other assets to liquidate and that it was going to put out a $75,000 bond issue, and with a $10,000 rental from the Sycamore Foundry Company it could take care of the fifteen per cent. discount; that for sixty days or more thereafter he sold appellant goods for Sycamore Foundry Company and collected eighty-five per cent. of the purchase price, and forwarded it by mail to Sycamore Foundry Company along with the Frank C. Patton Company's check for the fifteen per cent.; that immediately following the bankruptcy of the Frank C. Patton Company, April 18, 1906, he told Mr. Shaw that inasmuch as the Frank C. Patton Company was in bankruptcy, and there was no one to charge it over to, as he did not know where the lease would land, that he could not longer allow that discount, and that unless they would discontinue the fifteen per cent. discount he would have to discontinue shipping the goods as the foundry company could not stand it; that when he got personally able to pay his debt he would pay it, but he could not take it out of the foundry company, and that the discount was shortly thereafter (June 4th) discontinued; that after that he continued to sell goods to appellant for Sycamore Foundry Company until the latter became a bankrupt, March 4, 1908, and only made bills, and collected for the sales of goods delivered after June 4, 1906, and "we never sued for or tried to collect, for the discounts sued for in this case at any time, because we would have lost appellant's trade if we had." He also testified that "Mr. Hunt (secretary and treasurer of the foundry company) had charge of the sales, and from time to time made complaints that appellant, in making settlements, had taken out fifteen

per cent., the same as they did under the arrangement with the Frank C. Patton Company.'' The evidence in the record further disclosed that Mr. Hunt was an employe of the Frank C. Patton Company before it ceased to conduct the implement business, and that Mr. Wheeler was vice president of the Frank C. Patton Company and president of the Sycamore Foundry Company.

Mr. Thorne also testified that when Patton offered to sell appellant the goods in question that he said to him: ''Mr. Patton, we insist upon having this fifteen per cent. discount or we cannot do business—we won't do business; we will not place the orders or continue the business without the fifteen per cent.''

The evidence further disclosed that up to the bankruptcy of the Frank C. Patton Company no objection was made by any one to this discount and application thereof to Patton's indebtedness to appellant; and that for almost three years thereafter appellant paid or remitted the exact amount due on every subsequent bill to appellee without payment or reference to the discount taken before June 4, 1906, and without any complaint whatever from the foundry company, and that the foundry company never did at any time send a statement for, or in any way demand, or sue for, said discounts now in suit previous to the present suit by its trustee in bankruptcy. The reason, perhaps, was that if the foundry company had not acquiesced in the discount already made, that it would have lost the trade of appellant. In other words, we think this uncontroverted evidence tended to show knowledge and acquiescence of Sycamore Foundry Company in the arrangement made for the sale of the goods in question, including also the agreement of Patton to allow the fifteen per cent. discount and for him to pay the same to the foundry company by his own or the Frank C. Patton Company's check. This arrangement with appellant by Patton was not at all binding

on Sycamore Foundry Company when made, because it was not a party to it, and knew nothing about it until after it was made. When an agent is contracting in his own interest, and to the probable detriment of his principal, and by the contract he is agreeing to pay his own debt to the party with whom he is dealing, out of the money or property of his principal, it will not be presumed that the agent will transmit to his principal full particulars of such a transaction, or that the principal authorized such a transaction. *Leigh v. American Brake-Beam Co.*, 205 Ill. 147.

Where the evidence further tends to show, however, that the principal afterwards learned of such arrangement and acquiesced in or ratified the same, it is binding on the principal, though a corporation, unless the doctrine of *ultra vires* applies. Sycamore Foundry Company was a corporation organized to manufacture and sell farm implements. It undoubtedly had a right to sell and collect for the same, and, therefore, the right to extend credit and pass on security. It had the right in this case to accept the obligation of Frank C. Patton or the Frank C. Patton Company for fifteen per cent. of the goods that might be sold to appellant, and especially while the Frank C. Patton Company was not a bankrupt, and was renting Sycamore Foundry Company a plant at $10,000 per year, and it had such an opportunity to protect itself as to the fifteen per cent. of the goods so sold out of the rent. Why could it not do so? No good reason suggests itself, and none has been suggested to us, why we should say the foundry company had not the power to ratify that agreement. Its creditors could not complain or successfully attack the arrangement, unless shown to be done in fraud of their rights. Creditors have no right to dictate or interfere in the management of a corporation's business, and especially in business transacted long before their debts had an existence. The discounts antedate the insolvency of

appellee's company by almost three years, and the trustee in bankruptcy stands in no better position as plaintiff in this suit than would his bankrupt company, had it sued appellant.   We hold that the evidence tended to prove appellant's defense in bar of the suit.  The court cannot legally instruct a jury peremptorily to return a verdict against the plaintiff when the evidence tends to prove every material allegation of his declaration.  It it is also the law that the court must not direct a verdict against the defendant when the evidence tends to establish every material element of his defense.  *Libby, McNeill & Libby v. Cook,* 222 Ill. 206; *Alton Mfg. Co. v. Garrett Biblical Institute,* 243 Ill. 298.

The undisputed evidence now in the record fails to prove that appellant was guilty of any tort or conversion.  Mere delay in making payment of money that the defendant honestly believes he does not owe and making a defense to a suit for the money in good faith do not amount to such an unreasonable and vexatious withholding of payment as to authorize the allowance of interest.  If there are any grounds for allowing appellee interest, they do not appear in this record.

The judgment of the court is reversed and the cause is remanded.

*Reversed and remanded.*