## F. H. Hill Company, Defendant in Error, v. Anna M. Barmore, Plaintiff in Error.

## Gen. No. 25,342.

1. HUSBAND AND WIFE, § 147*—*when wife is not liable for money received though husband overdrew account.* A wife who receives from her husband, a salaried officer and a director of a corporation, from time to time throughout a period of 10 years, checks drawn on that corporation signed with the company's name, and by its secretary and countersigned by her husband, as president, and payable to her order, and uses them to defray the family expenses, cannot upon the death of her husband, and the discovery that his account was, during all that time overdrawn, be held liable for the amount of all she has so received and spent, where she had no knowledge of the state of her husband's private account with the corporation, and she was justified, considering the number of checks and the long period of time covered and the habit established, in believing that every check she received was for corporate purposes in payment of her husband's salary.

2. CORPORATIONS, § 387*—*when directors of corporation are charged with notice of overdrawing of account.* Where the books of the corporation showed that for 20 years the account of its president was continuously overdrawn, the directors, as trustees of the corporation, must be charged with a reasonable knowledge of its accounts.

Error to the Municipal Court of Chicago; the Hon. BERNARD P. BARASA, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and judgment here. Opinion filed December 22, 1920. *Certiorari* denied by Supreme Court (making opinion final):

HELMER, MOULTON, WHITMAN & WHITMAN, for plaintiff in error.

ADAMS, CHILDS, BOBB & WESCOTT, for defendant in error; JAMES B. WESCOTT and GEORGE B. MCKIBBIN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, F. H. Hill Company, a corporation, brought suit on April 16, 1917, against the defendant, Anna M. Barmore, for the amount of 106 checks which were drawn in its name and given from time to time by N. L. Barmore, who was president and general manager of the corporation, to the defendant, his wife. Its claim is that the money paid out to her on the checks was paid out from the corporate funds of the F. H. Hill Company without any authority from the stockholders or directors of the company.

The defense is that the defendant's husband, N. L. Barmore, who died in January, 1917, was the president and general manager of the plaintiff company; that he had a salary account, and from time to time drew, or directed the secretary and treasurer to draw on his account, checks payable to the order of his wife; that by such checks he paid over to her a certain portion of his salary each year and that it was charged to his account; that from time to time he drew currency and had it charged to his account; that he drew checks to his own order and paid bills in the regular course of business; that the checks were signed by the secretary and countersigned by the president and general manager of the company and charged to his account; that the fact that the account of her husband, N. L. Barmore, was overdrawn at the time the checks, signed by the secretary and treasurer of the company and countersigned by him, were drawn and charged to him, an officer of the company, on his regular credit and debit account with the company, could give rise to no liability on the part of the defendant, his wife, who knew nothing about the state of his account and who used the checks in payment of their domestic expenses. In addition to that defense the defendant filed a set-off upon a note of $3,700 which had been given to her by the plaintiff company for money which

she had loaned it, on September 2, 1914, at the request of her husband.

The F. H. Hill Company, the plaintiff, is a corporation which was organized on June 3, 1886, with a capital stock of $250,000. N. L. Barmore owned 30 shares and his wife, the defendant, 40 shares. The chartered purpose of the company is the manufacture and sale of all kinds of undertakers' supplies. Its place of business is Chicago, Illinois. One Hill was president of the company until his death in 1907. Nearly all the directors of the company lived in Cleveland, Ohio. They met generally about once a year. N. L. Barmore, the husband of the defendant, had an account on the books of the company for over 20 years, and during all that time he was one of the directors of the company, and after the death of Hill in 1907, having been vice president, he became president and general manager of the company and acted as such until his own death in the year 1917.

Under the presidency and general managership of N. L. Barmore the plaintiff was a successful, going concern, and paid large dividends on its stock. The salary of N. L. Barmore was $9,000 in 1912; $10,000 in 1913; $12,000 in 1914; the same in 1915, and $13,500 in 1916.

The personal account of N. L. Barmore, the credits on which were made up almost entirely of his salary account, was kept, as were other accounts of a similar nature such as those of employees generally, in a private ledger of the company. That book and the accounts it contained were accessible at all times to the directors of the company; it was kept in the office in the daytime and in the safe at nighttime.

One Traquair, who was also a stockholder of the plaintiff and who had been in the employ of the plaintiff for some years, became its secretary in 1906 and 1907. According to the evidence of Traquair the

salary account of N. L. Barmore—we entitle it that because that was at all times its substance—in the private ledger, which was one of the regular books of the plaintiff, shows that he was overdrawn for a period of 20 years prior to his death in 1917; that Hill, the former president, knew of the state of Barmore's salary account up to the time he, Hill, died in 1907.

On January 1, 1907, according to the books of the company, N. L. Barmore's account was overdrawn $38,144.11. Between January 1, 1907, and January 1, 1917, checks were drawn in the name of the plaintiff, F. H. Hill Company, signed by the secretary and countersigned either by Hill or N. L. Barmore as president and general manager, payable to the order of Mrs. N. L. Barmore, the defendant, aggregating $68,936.59. From time to time, in the course of those 10 years, those checks were given to the defendant by her husband and were used by her to defray their domestic expenses. During the same time, cash was drawn by him to the extent of $42,355.49, and checks to his own order in the total of $28,229.41. The checks making up the latter amount were drawn to the order of different people at N. L. Barmore's direction to pay his personal bills. His total withdrawals during that period, together with the amount of his overdraft as of January 1, 1907, were $177,665.60. On the other hand, the amount of his salary, together with certain small amounts as dividends and other credits shown on the private ledger account, amounted to $114,042.35, leaving a debit in his account as of January 17, 1917, of $63,623.25.

The plaintiff offered in evidence copies of 106 checks with their indorsements, all of which are practically in the same form, being signed by the plaintiff, F. H. Hill Company, W. M. Traquair, secretary, and then countersigned by N. L. Barmore, president and general manager, all payable to and indorsed by the

defendant. Checks that were made prior to 1907 were signed F. H. Hill Company, N. L. Barmore, secretary, and countersigned F. H. Hill, president and general manager. The first of the 106 checks was dated January 4, 1907, and the last December 30, 1916. The total amount of the 106 checks is $68,936.59.

The following is a schedule showing (1) the credits of N. L. Barmore with the plaintiff during the 10 years, and (2) the amounts drawn by checks to Mrs. Barmore, the defendant, in the course of the same years:

| Year | Credits to N. L. B. | Checks to Mrs. B. |
|---|---|---|
| 1907 | $ 8,295.85 | $ 4,800.00 |
| 1908 | 9,359.38 | 3,040.00 |
| 1909 | 8,680.00 | 6,400.00 |
| 1910 | 12,025.00 | 4,800.00 |
| 1911 | 12,949.16 | 9,000.00 |
| 1912 | 9,857.61 | 7,000.00 |
| 1913 | 11,050.00 | 5,300.00 |
| 1914 | 13,050.00 | 5,114.49 |
| 1915 | 13,050.00 | 8,297.10 |
| 1916 | 15,250.00 | 15,085.00 |
| | $ 113,567.00 | $ 68,836.59 |

It is the evidence of the defendant that the following amounts which she received in checks of the company, $7,000 in 1912; $5,300 in 1913; $5,114.49 in 1914; $8,297.10 in 1915 and $15,085 in 1916, she used for household expenses. It is, also, the evidence of the defendant, Mrs. Barmore, that she had no knowledge of the condition of her husband's account on the books of the company; that she had no "knowledge at any time prior to January, 1917, that Mr. Barmore had overdrawn his account with the F. H. Hill company."

At the trial, which was before the court without a jury, the plaintiff introduced the 106 checks, proof of the incorporation of the plaintiff and of a demand upon the defendant for payment of the amount of the 106 checks, and rested. There was then a motion

made by defendant's counsel to exclude all checks prior to April 18, 1912, on the ground that they were outlawed, and that motion was sustained. Counsel for the defendant then moved to exclude all the evidence on the ground that the plaintiff had failed to make out a prima facie case. That motion was denied.

Evidence was then introduced on behalf of the defendant and at the close of all the evidence the trial judge held that the defendant, having received the checks of the plaintiff, payable to her own order, she was charged with notice that the money obtained upon them was that of the plaintiff, and having failed to show by the evidence any indebtedness to her as consideration therefor, she had failed in her defense. Accordingly, giving her credit for the amount of the note of $3,700, together with interest, which she had pleaded as a set-off, he entered judgment against her for $41,459.76. This writ of error is prosecuted for a reversal of that judgment.

That a wife who receives from her husband, a salaried officer, and a director of a corporation, from time to time throughout a long period of years, checks drawn on that corporation signed with the company's name, and by its secretary and countersigned by her husband as president and payable to her order, and uses them to defray the family expenses, may upon the death of her husband, and the discovery that his account was, during all that time, overdrawn, be held liable for the total amount of all she had so received and spent even though she had no knowledge of the state of her husband's private account with the corporation and even though the total amount she received was not equal to his total salary for the time in question, is a somewhat startling proposition.

Counsel for the plaintiff rely almost entirely on the case of *Leigh v. American Brake-Beam Co.*, 205 Ill. 147. In that case, the plaintiff, a corporation, brought suit against one Leigh for two checks, one

for $1,000 and one for $2,500, claiming that they had been issued by one Laughlin, the general manager of the plaintiff, without authority or consideration. In the trial court in that case the defendant made an offer of proof which was rejected and that rejection was sanctioned by the Supreme Court. The offer was as follows: "That he (Leigh) and Laughlin (general manager of the plaintiff), with Atkins and Milliken, were jointly interested in mining enterprises; that Laughlin offered to furnish Atkins and Milliken money, up to $10,000, to carry on the work of those enterprises; that Laughlin said he could obtain money from his corporations, one of which was the plaintiff, and would furnish such money to Atkins and Milliken; that the checks were given to defendant for the purpose of using the money in that way for the joint benefit of Laughlin, Atkins, Milliken and defendant in their private enterprise, to which the plaintiff was not a party and in which it was not interested in any way; that the moneys were transferred by defendant to Atkins and Milliken for said purpose and applied to that object, and that Laughlin was the president of the plaintiff and the owner of fifteen-seventeenths of its stock."

In commenting upon the proffered evidence, which was rejected, Mr. Justice Cartwright said: "It need scarcely be said that the president and general manager of a corporation has no authority, by virtue of his office, to appropriate the money of the corporation to the use of himself and his partners in his private business. The defendant had full notice, both by the checks and the agreement which he offered to prove, that the money of the plaintiff was being taken by its president, acting in the interest of himself and his associates, to be used for their joint benefit, and not for any purpose or business of the corporation." Further, in that opinion it stated that the "defendant admitted that he had full knowledge that the checks

were not given for any corporate purpose, and therefore knew the want of power of Laughlin to bind the corporation."

There are a number of striking differences between the facts set forth in the evidence offered in the *Leigh* case and that introduced in the instant case. For example, in the *Leigh* case, Laughlin told Leigh that he could obtain money from his corporations, one of which was the plaintiff, and would furnish such money to Atkins and Milliken for certain private enterprises in which the plaintiff had and would have no interest and to which it owed no obligation; whereas, in the instant case, as far as the evidence shows, the defendant was entitled to assume that the checks which her husband gave her were for his salary and paid out for "the purpose or business of the corporation." There is no evidence here, such as there was in the *Leigh* case, that the defendant had any knowledge that the money was taken without consideration and not for corporation purposes. On the other hand, it is a reasonable inference, considering the number of checks and the long period of time covered, and the habit established, that the defendant was justified in firmly believing that every check she received from her husband, even though the drawer was the plaintiff company, was in payment of part of his salary. In the *Leigh* case the court said that, "The defendant had full notice, both by the checks and the agreement which he offered to prove, that the money of the plaintiff was being taken by its president, acting in the interest of himself and his associates, to be used for their joint benefit, and not for any purpose or business of the corporation." Here, in the instant case, the only reasonable notice that we may infer that the defendant had was that the checks which were given to her in the course of so many years were actually given for the "purpose or business of the corporation." Counsel for the plaintiff urge that the checks were

not given for any corporate purpose. With that we are unable to agree. There is no evidence but that every check Barmore gave his wife was, or at least purported to be, for part of his salary. In the 10 years from 1907 to 1916, inclusive, his account showed credits of $113,567, practically all of which was for salary which he had earned, and that during that time the debits for checks given to the defendant were only $68,836.59; and, further, in no one of those 10 years, save 1916, did the total of a year's checks given to the defendant equal the amount of his salary for the particular year; and even in 1916, his salary and dividend credits exceeded the checks he gave his wife that year.

The plaintiff offered in evidence the 106 checks and evidence of a demand for payment, but that evidence, that of the checks, does not prove either that the defendant knew that her husband's account was overdrawn or that the checks were not for his salary.

Certainly there is no equity in favor of the plaintiff's claim. The books of the corporation, accessible to the directors at all times, showed that for 20 years the account of Barmore was continuously overdrawn, and, although most of the directors lived in Cleveland, they, as trustees of the corporation and responsible for its conduct, must be charged with a reasonable knowledge of its accounts. Traquair, the secretary and a stockholder, knew, and so did Hill, who was the president until his death in 1907. It was a going concern and, while under the management of Barmore, made large profits, and although the directors may not have thought it worth while or necessary to investigate the books sufficiently to become familiar with the account of Barmore in the private ledger, still that does not relieve them of their duty as directors nor justify them now, after his death, in charging the defendant. We are of the opinion that the evidence fails to make out a case and that, therefore, the judg-

ment must be reversed, and judgment entered here in favor of the defendant and against the plaintiff on her set-off in the sum of $3,700, with interest thereon at the rate of 5 per cent per annum from September 2, 1916, to date, together with costs in both courts.

*Reversed and judgment here.*

O'CONNOR and THOMSON, JJ., concur.