**LA PARR et al. v. CITY OF ROCKFORD, ILL.**

No. 6701.

Circuit Court of Appeals, Seventh Circuit.

Dec. 6, 1938.

Arthur V. Essington and Charles S. Thomas, both of Rockford, Ill., for appellant.

R. P. Lichtenwalner, of Rockford, Ill., for appellee Henry La Parr.

Charles H. Davis, of Rockford, Ill., for appellee Board of Education.

Charles A. Thomas, of Rockford, Ill., for appellees Trustees of Firemen's Pension Fund et al.

C. H. Linscott, of Rockford, Ill., for appellee A. B. Culhane.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant, a municipal corporation of Illinois, appeals from a decree directing it to repay to the receiver of the Manufacturers National Bank and Trust Company, $401,820.49 as principal and $177,261.85 as interest, the principal representing a deposit of $1,030,309.58 to the credit of the city at the time the bank closed under order of the comptroller, less a dividend of 61 per cent, equal to that which had, at the time of the

entry of the decree, been paid to other depositors. The court dismissed the suit as to the Board of Education, the Board of Trustees of the Firemen's Pension Fund of the City of Rockford, the Board of Trustees of the Police Pension Fund of the City of Rockford, the City Treasurer and the City Clerk.

Plaintiff was a depositor in the bank and as such brought this suit on June 14, 1933. He had previously demanded that the receiver bring the suit, that the comptroller require it to be brought and that the bank itself sue. Each demand was refused, and thereupon plaintiff filed the bill in behalf of himself and all other depositors similarly situated.

The bank closed its doors under order of the comptroller as insolvent June 13, 1931. A receiver was appointed and took possession of the assets. Of the moneys of the city then on deposit, one portion represented funds of the Board of Trustees of the Police Pension Fund, another, funds of the Board of Trustees of the Firemen's Pension Fund, and another, those of the Board of Education. The entire deposit was secured by a pledge agreement entered into May 12, 1931, whereby, in pursuance of a resolution of the Board of Directors of the Bank, the latter agreed with the city to receive the deposit and to secure payment of the same by pledging as security assets of the bank sufficient to protect it. Shortly after the bank closed, in pursuance of authorization by the comptroller, the receiver delivered to the city, moneys and securities sufficient to pay the deposit in full. This action was further authorized by an order of court entered upon the receiver's petition.

The District Court found that the city had disbursed the moneys received from the bank prior to December 31, 1931, except that portion which represented funds of the Board of Education; this it had delivered to that Board. It concluded that plaintiff might rightfully bring the suit; that the pledge of securities and the repayment of the funds by the receiver were ultra vires and illegal; that the approval of the action by the court did not bar maintenance of the suit; that the undisturbed retention of the money would amount to a preference by the bank in violation of the acts of Congress; that the city, having illegally and wrongfully received the money, could not exonerate itself from liability by showing that it paid any part thereof to another municipal agency for which it was acting; that the city was liable for the principal, less the dividends paid, plus 5 per cent interest from the date of payment until the entry of the decree; that the bill should be dismissed as to all defendants except the city and intervening petitioner Culhane, the successive receiver of the bank. This receiver had intervened as a defendant, filing an answer to plaintiff's bill and a counterclaim against the city seeking recovery of the money.

Defendant insists that voluntary payment by the receiver, pursuant to instructions of the comptroller, estopped plaintiff and the receiver from recovering the money; that the failure to bring suit or make a demand on defendant for return of the money until more than eighteen months after payment barred a recovery because of laches, in view of the fact that defendant had changed its position by expending all of the money for municipal purposes prior to commencement of suit; that the court should have left the parties where it found them, and refused to set aside a completely executed transaction; that the depositor, under the circumstances existing in this case, should not be allowed to institute and maintain this suit; that defendant should not be held liable for money delivered by it to the Board of Education, the Board of Trustees of the Police Pension Fund and the Board of Trustees of the Firemen's Pension Fund; and that, in any event, the decree should not have allowed interest from the date of payment of the money, June 13, 1931, but only from the date of the decree.

It is apparent that the pledge of assets of the bank to secure the deposit of the City was an ultra vires act, beyond the legal power of the bank. This follows, in view of the fact that this national bank was located in the State of Illinois, from the decision of the Supreme Court in City of Marion et al. v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, affirming the decision of this court in 7 Cir., 64 F.2d 721, holding that banks created under the laws of Illinois do not possess the power of pledging assets to secure the deposit of public money of political subdivisions of the state and that consequently, in view of 12. U.S.C.A. § 90, providing that a national bank may give security for deposits only if the laws of the state wherein it is located authorize banking institutions of the state to do so, a national bank in Illinois

has no such power. Following this decision, the Supreme Court of Illinois reached the same conclusion in People v. Wiersema State Bank, 361 Ill. 75, 197 N.E. 537, 101 A.L.R. 501. In Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83, this court, in a similar situation, held that, where a receiver of a national bank, under an erroneous interpretation of the law, had consented to the sale of pledged assets to satisfy the deposit of the village, the act was wrongful and the receiver might recover the amount received by the depositor. Again in O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, affirmed by the Supreme Court in 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733, where a depositor of a closed bank filed suit to recover the money paid by the receiver under a void pledge of assets, he was permitted to maintain the suit. See, also, Fidelity & Casualty Company v. Allen, 7 Cir., 84 F.2d 53; Griffin v. Royall, 4 Cir., 70 F.2d 103; People v. Cairo-Alexander County Bank, 363 Ill. 589, 2 N.E.2d 889; Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; Inland Waterways Corp. et als. v. Hardee, App.D.C., 100 F.2d 678.

 It follows, therefore, that the pledge of the assets was illegal; that the action of the receiver and the comptroller in carrying out the pledge agreement, though in good faith, under an erroneous interpretation of the law, was likewise beyond their legal powers, and that upon the receiver's failure to repudiate the transaction and his refusal to bring suit to rescind the same, plaintiff had a right, in behalf of himself and other depositors, to institute and maintain the action. It is of no moment that the bank and the city, in the original transaction, and the comptroller and the receiver on the one hand and the city on the other, in their transactions, acted in the utmost of good faith. All of the parties assumed that the pledge was valid. Their assumption was incorrect, but that it was erroneous was not authoritatively established by the Supreme Court until after the payment of the deposit to the city. Immaterial, however, is the motive that inspired the parties, for, under the law, the pledge was invalid, and no act of the bank, the receiver or the comptroller could validate it. The comptroller and the receiver are officers of the United States and any mistake upon their part, in violation of their legal powers, even though made in good faith, necessitates rescission of the unauthorized act and the recovery of the money paid thereunder. Wisconsin Central Railroad Company, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399; In re Chetwood, 165 U.S. 443, 17 S. Ct. 385, 41 L.Ed. 782; Champ Spring Co. v. United States, D.C., 38 F.2d 988; Heidt v. United States, 5 Cir., 56 F.2d 559; Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83; Talcott v. United States, 9 Cir., 23 F.2d 897.

It is insisted, however, that the acts of the receiver and the comptroller in some way endowed the transaction with validity. That this contention cannot be sustained is apparent from Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, wherein the court announced that a receiver is not estopped to deny the validity of the pledge; that no rights arise on an ultra vires contract, even though it has been performed, and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised. The court held that, even though the bank might have been estopped from asserting lack of power, its receiver is free to challenge the validity of the pledge; that an unauthorized pledge reduces the assets available to the general creditors and it is the duty of the receiver to take steps to set aside transactions which wrongfully reduce assets available for creditors, where the corporation does not do so. Inland Waterways Corp. et al. v. Hardee, supra.

 Nor are we persuaded that there is any basis for finding that plaintiff was guilty of such laches as to bar his action. There was a delay of eighteen months between payment of the deposit and institution of the suit. In the meantime, came the authoritative decision of the Supreme Court as to the invalidity of the pledge. During this interval, the city had paid out approximately $603,000 of the money received for lawful municipal purposes, but this did not place defendant in any worse position than it occupied at the time it received the money. It was not damaged by any delay, for the funds were expended for its corporate purposes. That it spent for those purposes that which it received, created no prejudice against the bank or its depositors barring this action. Mere lapse of time does not build up laches; whether the facts are sufficient to establish such a defense must be determined from equitable principles. Laches as a defense is approved only where it creates an inequity. Here there is no evidence of such result.

■ Closely akin to this contention is the one that, the contract having been performed, plaintiff and those in privity with him are estopped to deny its validity. Such a defense, we have seen, fails under the doctrine of Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777. The doctrine that a court will not disturb a fully and completely executed contract but will leave the parties where it finds them does not apply here, for the depositors of the bank were not in pari delicto with the beneficiaries of the wrongful payment, and the receiver as their official representative may not thus be deprived of his remedy to recover for the benefit of his cestui que trusts.

■ It is contended that the court should not have dismissed the Board of Education, the Trustees of the Firemen's Fund and the Trustees of the Police Fund. It is apparent, however, that none of these organizations is a separate corporation in contemplation of law but that each is merely an arm and part of the city government and as such not liable in any legal sense.

Rockford is incorporated by special charter, under which all power in connection with the operation of the school system is granted to the city council, as modified by the general school laws. Under this charter, the city has the power to create and alter school districts, support and maintain the same and collect taxes therefor, which are kept in a special fund. Of these, as of all the city's corporate funds, the City Treasurer is the custodian and as such he deposited them as a part of the city's. These funds were the property of the city and were not expended except as the Board of Education, appointed and controlled by the city, certified its necessity for the same. Thus, in Brenan v. People ex rel. Kraus et al., 176 Ill. 620, 52 N.E. 353, where a similar relationship existed between the City of Chicago and its Board of Education, under a similar city charter, the court held that the Board was connected with, dependent upon and to some extent a part of the municipal government of that city. In the later case of People v. Bither et al., 231 Ill. App. 301, the court held the ownership of educational funds to be in the city and not in the board, saying that, though the school fund is a separate one, raised by the city for a special purpose, it is nevertheless a part of the funds received and held by the treasurer by virtue of his office as such. Consequently the liability was against the city and not against the board, and the latter was rightfully dismissed.

Likewise, the Trustees of the Firemen's Fund and those of the Police Fund are merely arms of the municipal government; all proceedings carried on by them in administration of funds are part of the business of the city. 1 McQuillin Municipal Corporations, 254; People v. Faherty, 306 Ill. 119, 137 N.E. 506. Consequently, there was no liability upon the part of the trustees. The funds held for their benefit were those of the city and, having received them improperly, it must repay them.

We find no error in any respect in the decree so far as the principal sum involved is concerned.

Defendant insists, however, that the court erred in decreeing interest from the time the money was received, and points to the good faith of the parties in the transaction in making payment. This court had occasion to examine the liability of a municipal corporation for interest upon funds improperly paid to it in the City of Chicago v. Joseph, 7 Cir., 95 F.2d 444. We there. discussed the Illinois authorities and held that, without regard to the uncertainty as to the proper interpretation of the law, the pledge being unlawful, the defendant, having received the money in pursuance thereof, was bound to know of that illegality. This, we held, was clearly within the statute of the State of Illinois allowing interest, Ill. Rev.Stat. 1937, c. 74, § 2, as interpreted by the Supreme Court of that state. Thus, in Leigh v. American Brake-Beam Co., 205 Ill. 147, 68 N.E. 713, it was held that where a contract is ultra vires and a municipal corporation receives money under it, which in equity and good conscience belongs to another and which it ought to pay, it is liable for money had and received with interest after demand. To the same effect are Brennan v. Gallagher, 199 Ill. 207, 65 N.E. 227; United States Brewing Co. v. Dolese & S. Co., 282 Ill. 588, 118 N.E. 1006; Conway v. City of Chicago, 237 Ill. 128, 86 N.E. 619. We adhere to the doctrine there announced.

■ It appears, however, that no demand was made by plaintiff upon defendant prior to the commencement of the suit. As we interpret the Illinois decisions, the liability for interest did not accrue until a demand was made. The retention of the money after demand amounted to a conversion and from the date of the conversion, liability for interest, under the Illinois

statutes and decisions, accrued. But the conversion, under the facts of this case, did not occur until claim was made. The earliest demand here was that of the suit itself; thenceforward, as we interpret the law of Illinois, defendant was liable for interest; prior to that time, no liability existed. Thus, in Turk v. City of Chicago, 352 Ill. 171, 185 N.E. 258, it was held that a municipality is not chargeable with interest "except where money is wrongfully obtained and illegally held by it." See, also, Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 3 S.Ct. 570, 28 L.Ed. 109. Here the money was voluntarily paid to the city and, though this was improper under the law, it seems to us, in view of the honest belief of the comptroller, the receiver and the bank to the contrary, it cannot be that it was illegally withheld until demand was made for repayment. Consequently, the court was in error in including interest from the date of the payment until the date of commencement of the suit.

The decree of the District Court will be reversed with regard to that portion thereof relating to interest and the cause remanded with directions to enter a decree allowing interest from the date of the commencement of this suit. Appellee will pay the costs of this appeal. In all other respects, the decree is affirmed.